May it please the court, my name is Dominic Cappecci. I'll be representing the petitioners in this case, which are the Kumars, which is a husband, a wife, and their oldest son. The Kumars filed a sua sponte motion to reopen the, excuse me your honors, this case is about whether or not the time frame for which this motion was filed should be equitably told. Well there's, let me stop you there because there's really no time limit on a true sua sponte reopening. That is true your honor, but the board would have arguably unfettered discretion in order to determine whether or not that should be reopened and then this court may or may not have jurisdiction review that based on Well our case law is pretty clear that when the board, when it's a pure sua sponte determination by the board, our case law is clear. We don't have jurisdiction to review their decision not to exercise their sua sponte authority to grant relief. I understand that your honor. So what's troubling here is the motion that was filed was styled a sua sponte motion to reopen, which one could say that that was suggesting to the board that they ought to exercise their own authority and reopen. But on the other hand, when you read it carefully, they also, the motion also seems to be asking just a straight motion to reopen on the basis of equitable, exceptional circumstances warranting equitable tolling of the time and numerical limitations on a regular motion to reopen. I would agree your honor. I believe both arguments are found within the motion. But you know, if I read your brief, when I read the brief that was submitted to this court, I'm not sure exactly what you're arguing. Your honor, within the petition at page 2 and also the show of cause, which did discharge the order to show cause at 3 and 11 through 11, excuse me, 11 through 14, petitioner did assert both arguments that the sua sponte should have been granted and that there's a meaningful standard by which. Stop saying sua sponte. I mean, the argument you need to make. Yes. Yes. We're entitled to file a motion to reopen. Yes. We've already had one. Yes. It's late, but we're entitled to equitable tolling. That's right. You're on a minute. You say you should sue a sponte. Then you're going to knock us out of jurisdiction. We can't. Right. That's correct, your honor. And that's why I was about to say that at 8 U.S.C. 1252 A2D, this court does have the power to review the denial of a motion that is, that was filed timely because the time frame was equitably tolled. And that would be found at this court's precedent at Rodriguez-Laurie-Socote-Gonzalez and Eritubara versus INS. So, excuse me, the petitioners did argue that in this case. So, in the board's ruling, the board looked at equitable tolling and agreed that there had been ineffective assistance of counsel. Yes. Got rid of the prejudice prong, I guess, but said there, in the context of equitable tolling, there has to be diligence. Yes, your honor. And they went, they said, okay, well, even if we just look at this from February 2003 to, what is it, August 2003? It was, yes, August 2003. They say that there was unreasonable, there was no showing of diligence during that period of time by the petitioners to look, you know, to sort of protect their rights. Yes, your honor. How do you, how do you, or July, I guess it's July. What's your response to that on this record? Your honor, I would respond on this record that the petitioner first discovered that there was a problem in July of 2003, according to his declaration, which has been held as fact by all parties, including the board. When he met with the offices of Kaiser and Cappucci, he could not have reasonably known before that that there was a problem. The board points out that he should have known when he was informed that there was a dismissal of the appeal, a denial of the motion, and a dismissal of the petition before the court in 2002, September 2002. But he was told that it was because of the merits of his case that this was a problem, not because that all three of these things were filed untimely. So in his belief, he's relying on an individual who supposedly knows the law, who's telling me your case is weak, but I can file another motion to reopen for you. All you have to do is pay me $2,000 and I'll do that for you. He has no way to know that this person is perpetrating fraud and deceit, which is replete throughout the certified administrative record until an order of deportation, actually we call it a bag and baggage order, Your Honor, on an I-166, is provided to him on the 2nd of July, which is exactly what happened in SoCope, Gonzales, almost the exact same time frame. In that case, it was July 7th, 97 to August 11th, 97, when the motion was filed. In this case, it was July 2nd, 2003, and we filed our motion August 13th, 2003. But we're talking almost the exact same number of days when the actual notice that there was a problem occurred when they were asked to be deported. Between September of 2002 and July 2003, they were reasonably relying on his representation that he could file some more things, that their case is weak, but they still had procedures to pursue their appeal. And I don't think it's unreasonable for one to assume that as Vigliela was retained in 99 and finally they were notified in September of 2002 that this is a two-year and three-quarter-month time frame. Well, this case itself has taken three years and four months before this court, this petition itself, which is longer than that time frame. So I think an individual who's an Indo-Fijian relying on another Indo-Fijian that all of his friends go to that's on the radio says, well, it took two and three-quarters years, but your case is simply weak, and plus we have more procedures. I think that he was reasonably relying on that. I think that his first awareness, according to the record, in his declaration, pages 99 through 103 of the record, was when he received an importation notice, which would have been July 2003. Even if you say that he was aware that there was some attorney in February 2003 until July 2003 that was working with Mr. Vigliela that he didn't know about, all the better that Mr. Vigliela is working with somebody that's following these papers because a legal assistant and an attorney can work together. So they were unaware that there was a problem until they received the deportation notice. They confronted him on the 7th of July, found that the check that they had written for this, you know, third motionary open had never been cashed, and therefore the motion had never been filed, the third one. And that's when they realized he charged us in November 30, 2002, for another motion, and nothing has been done because this check hasn't been cashed. Now, five days previous, we've been ordered to present ourselves to be deported. There's a problem here. Within five days, they engaged new counsel, and within less than actually a little bit more than a month, the motion was filed. So I think the exercise of due diligence, Your Honor. I don't believe the fact that their work may have been denied. Just one procedural matter just to clear up for me, and that is if you were to prevail, if they had prevailed in all of this, this was just to allow the petitioners to file a direct appeal. Is that correct? Is that how? Yes, Your Honor, because we cannot determine the merits of the asylum claim or the restriction on removal claim because there's no transcript of hearing within the certified administrative record. So it all goes back to they were deprived of their appeal to the Ninth Circuit. Yes, and that was the prejudice that the board did admit occurred. Okay. Do you want to save the rest of your time for rebuttal? I will, Your Honor. Thank you very much. Good morning, Your Honor. May it please the Court. My name is Andrew McLaughlin, and I represent the Respondent-Intern General of the United States in this case. Before we get to what the Court has just been talking about here, let me observe one point at the outset. There isn't an issue here regarding removability. There isn't an issue here regarding ineffective assistance of counsel. That's all off the table. The question is, what did the board do in its most recent decision? And what the board did in its most recent decision, as following the pattern that this Court has directed it to follow, is it looked to see whether equitable tolling applied, and if equitable tolling was going to have to apply in the case, then it wouldn't have to look at the sua sponte issues. Once it determined that equitable tolling did not apply, applying the law of this Court, then it looked at its sua sponte restrictions. Would you agree, then, that we have the power to review whether they were correct in their equitable tolling decision? Yes, Your Honor, under the law of this Court. So the board, in fact, did two things. It did what it was required to do. It looked at equitable tolling, and it looked at sua sponte reopening. Now, the point of that discussion is, when you look at Petitioner's brief, the brief to which Respondent has responded, Petitioner has waived the first part. He has waived equitable tolling entirely. He has waived any argument regarding the board's decision regarding diligence, and, in fact, has argued only sua sponte reopening. Well, as I mentioned, it was a little confusing, but you do see the essence of equitable tolling within the context of sua sponte. They just confused this. For some reason, when they looked at this regulation, the word sua sponte must mean something to somebody who was involved with this brief or with this whole proceeding because they unfortunately used that term, and it confuses the approach that's taken here. But I don't think you can say that the briefists, they have totally abandoned any claim about equitable tolling. There is no challenge to the board's finding regarding diligence whatsoever. The actual finding by the board that there was no showing of due diligence is not challenged in the brief whatsoever. Without that, there is no challenge to the board's finding regarding equitable tolling. There isn't one in the brief, at least not that I found. But, you know, I'll defer to you on what you find in the brief. With respect to sua sponte reopening, the brief argues that there is some sort of clear standard regarding sua sponte reopening, and this Court has been absolutely clear about that. That argument is going to get to many places. Don't worry about that argument. There's no argument there. So the only question, then, is, is equitable tolling even before the Court in this case? And the position of the government is, in fact, it's been weighed by failure to argue the diligence point, which is the only point. If you argue it for me anyway. I understand. All right. You know, we want your input. So why, you know, tell me why the board was correct in determining that they didn't exercise due diligence. This is a hiding your head in the sand case. This is a case in which the alien was involved in a proceeding which was unquestionably vital to his future beginning in 1999 and went to a consultant who said he could help him. Fine. The consultant filed something. They went through proceedings before the immigration judge and lost. That should be a clue that there's something wrong. They filed an appeal with the board. Now, it's not clear exactly when or if or how the petitioners knew that they lost that proceeding, but we do know that they filed another motion to reopen after that based on changed circumstance. So you might infer from that that they knew that they lost the first one, their first appeal to the board. Now, the appeal to the board was untimely in itself. That in itself should have caused them to inquire, why did I lose? What is going on? I'm suspicious. Regardless of how much you trust this guy, he's done something that has lost me the case. Now, if you look back to Rodriguez-Larratt's, this court's case in which all of these other cases flow from, in that case, as soon as they lost the case, they went and found an attorney and said, why did I lose this case? What went wrong? And the attorney said, this is what went wrong. You got screwed. In that case, they did exactly the right thing. In this case, we go years and years and events and events, each one of which should have caused them to say, wait a minute, why did I lose? Show me the decision. Is there a lawyer involved in this case? They filed a petition for review with this court. They know they filed a petition for review with this court, and yet they didn't suspect that there was a lawyer involved in the case at that time? All of these things are background to what the board found. The board was looking at two things. There was an allegation of ineffective assistance of a consultant, and there was an allegation of ineffective assistance of counsel. But what the board found is, regardless of all that other crap, when you get down to it, when you find out that you had a lawyer, that there was a lawyer representing you in February of 2003, and you don't stop at that point and say, whoa, wait a minute. As they indicated in their affidavits, they were surprised by that. After this long history of appeal, case before the immigration judge denied, appeal denied, motion to reopen denied, the INS tells you, even though your consultant hasn't told you, the INS tells you, you haven't got a pending case. And that doesn't cause you to say, this guy is not doing the right thing? They've never been informed that, as I understand the record, they had not been informed up to that time that the prior denials were for procedural matters, lack of timeliness and whatnot. It is until that time that they're led to believe that it's based on, you know, they just don't have a good case, and so the consultant tells them, we're going to file, I'm going to file another motion to reopen, and we're going to add some new information. Your Honor, the evidence in the record is shallow, shall we say, in that respect. The only time they ever tell you that they were told why something happened was regarding what the action of this court in denying the petition for review. What happened is, after they were informed by the board, by the INS, that they had no pending cases, they went to the immigration consultant, and sometime after that, a petition for review was filed with this court. When that petition for review was denied, sometime later, months after that petition for review was denied because it was, in fact, untimely, they went back to the immigration consultant for some reason, and the immigration consultant told them that a petition for review had been denied because their case was weak. That's the only time they ever tell you that they were told that the reason was their case was weak. They don't tell you why they thought their original case before the immigration judge was denied, why they thought their original appeal was denied, why they thought their motion to reopen for changed circumstances was denied. They don't make that allegation. They don't give you that hint. And, in fact, they didn't, whether or not, they just didn't ask, is my conclusion. My conclusion from the record is they didn't know. They didn't think about it. They didn't care. They had a work permit, and that's all they cared about. They had this thing looming over them that this court has held is really, really important and ought to cause people to inquire, and they failed to make any inquiry. Well, you know, a lot of these people who are immigrants and live within these communities, they, you know, we see a lot of cases where they rely upon these consultants or lawyers who are, you know, who are just terrible. We see lots of fraud, lots of malpractice, just case after case after case. Yes, Your Honor, and the solution for that, the only solution that's available under those circumstances is the kind of equitable tolling or so respond to reopening that you see is available. But to do that, you have to apply due diligence. You have to show that you care. You have to be involved in your case. This is an extraordinary remedy that's not supposed to be applied routinely just because there is fraud going on out there or just because somebody makes a mistake. This is not that circumstance. This is the circumstances of the hundreds of other cases that this court gets that makes that same allegation where the respondent simply, the petitioner in the case, the alien, simply didn't show any interest at all in figuring out what was going on as long as he was still here and as long as nobody was knocking on his door. And that's not the way our legal system works, Your Honor. That's not what the constitutional doctrine of equitable tolling is all about. That doctrine is based on something that requires the person to be involved. It requires the person to be engaged. And that's exactly what you see in all of your case law, even in Itabarria, where the essential finding after that was that the alien was misled into not inquiring further. Well, they say that in February they were told he would file another motion to reopen. That was actually November of the previous year. They show up in February and they write the check again or whatever they did. No, that was actually July that they initialed the check again. But here's a perfect example. They know that these bad events have happened previously, and yet they don't notice that their check hasn't been cashed in November of 2002. All of these things is a vast volume of poor diligence, the kind of diligence that we don't reward with equitable tolling. And there aren't any cases that stand for that principle. The most recent case that you see in this court, March of this year, the Wright case, is a case in which as soon as the alien discovered that there was something wrong, it went to another attorney, and that attorney required four months to comply with the requirements of Lozada, and therefore that period of time was told for that period of time. In this case, it's clear. It only required one month to comply with Lozada. The alien simply wasted five months knowing that he had an attorney who wasn't working for him. If there's nothing further, I have nothing further to offer. Thank you. Thank you, Your Honors. First of all, the petitioner never did concede the issue of equitable tolling. In fact, the respondent concedes that it's before this court in its brief when it says the issue raised by petitioners for review by this court is whether the BIA abused its discretion in determining petitioners did not exercise due diligence in discovering ineffective assistance to counsel. See petitioner's brief at 21. See, the concession was not that equitable tolling is before the court. The concession was that it could be before the court. We would have power to review it, but that you had not raised it. The only arguments I see in your brief for equitable tolling are that ineffective assistance is an exceptional circumstance, and therefore the board should have granted reopening to a respondent. Well, it was brought up on page 2 of the petition within the order to show cause, 11 through 14. It was addressed in the brief, maybe not as fully as the sua sponte, which is a separate argument, but it was not conceded, and I'm asserting it today, Your Honors. I just would like to – The board discusses it a little bit, but then it kind of moves away from the subject. It does – well, I think the only issue is whether or not due diligence was exercised, because the board does say Lozada was adhered to. It does say there was ineffective assistance to counsel and that there was prejudice in one sentence. And so we're asserting that the petitioners did exercise due diligence and did it as soon as they discovered a problem. Well, you know, before the board, they don't claim that you didn't raise equitable tolling before the board, because you did. It's right there in the brief on page 26, the doctrine of equitable tolling. But they're talking about the brief to us. Right. All right. Thank you. You went over your turn.  The matter will be submitted. Thank you.
judges: Canby, Cox, Paez